*125 OPINION of the Court, by
Ch. J. Bibb.
On the 27th of December, 1782, Thomas Brooks entered 3231 acres of land“-lying on the ridge between Hink-ston’s fork and main Licking, about twelve or fifteen miles southwest of the upper salt spring, including some of the waters of both forks ; beginning at a pond on the ridge and running S. W. 720 poles, then cornering and running S. E. 720 poles, then N. E. 720 poles, then to the beginning.”
On the 13th March, 1783, John Dupuy entered 5054 1-2 acres of land, “-beginning on the Indian war road, between Hinkston’s fork and main fork of Licking creek, at a small creek nearly east of Thomas Brooks’s entry of 3231 acres, running from the said creek S. four miles, then cornering and running E. to include the quantity at right angles, excluding prior rights and land unfit for cultivation.”
On the same day, James Dupuy entered 4500 acres, ** ——beginning at the beginning of John Dupuy’s entry of 5054 1-2 acres, then west one third oí the length, then south so far as will include the quantity twice as long as wide, excluding prior rights and land unfit for cultivation.”
*126 Leonard Turley, claiming by virtue of the last entry*, exhibited his bill against Weathers Smith, praying for an injunction against a judgment in ejectment, and for relief against the senior grant obtained by Smith in con» sideration of another warrant of survey ; which complaint being finally heard upon the bill, answer, exhibits and depositions, a decree was pronounced in favor of Turley ; by which the validity of the entry was recognized, and a construction given to it so as to embrace all the land in controversy; from which Smith appealed,
The case has been ably argued on both sides, and it remains for the court to decide between the parties which, happily, can be done upon principles well established in this court as settled rules of property,.
The connected plat returned exhibits the war road* claimed by the appellee, as intersected at so many different points by streams which would answer the relative expression, ila small, creek,” that it is impossible to say which creek was alluded to in his entry, unless the reference to the entry of Thomas Brooks’s location can. precisely designate it. There is nothing else in either entry which can aid in- rendering the beginning certain. The attempt t® derive aid by using the expressions in. John Dupuy’s entry from the creek,” however ingenious, is too far-fetched, and. would actually leave the matter as uncertain as before : for there are several other streams, intersected by the road, which would comply with the idea of leaving the creek in running the four miles still better than the point contended for by the appellee. But, in truth, we think, the defence was in this part overstrained.
The place sworn to, by Ambrose Coffee, as a pond, in William Thompson’s field, can have no influence in the decision of the cause ; first, because Coffee’s deposition is wholly discredited by counteracting testimony on other points in his circumstantial detail: secondly, because th« counteraction of other testimony is toa strong to admit a belief that the place ever deserved to satisfy the intention of a locator in naming a pond as his beginning. But when we apply the general description of Brooks’s entry to that place, the matter is past belief, that a locator would ever have supposed Brooks meant that place. Brooks’s entry expresses ta *127 lie about twelve or fifteen miles from the upper salt spring ; that place is between five and seven miles only. The counsel for the appellee would have the court to fix Brooks’s beginning where the middle of the dividing ridge between Hinkston and Licking would be intersec» ted by a line extended south forty-five degrees west from the upper salt spring, disregarding the allusion to a pond. But we do not consider the expression of south west, as used in that entry when speaking of the distance from the salt spring, as any attempt at precision or locative description of a beginning independent of the pond. It was intended to lead to the pond, which he called for as his precise beginning, from whence his courses and distances were to be run. It must be taken as a general direction to those who might wish to find his beginning and avoid his claim, that in going from the salt spring, when they came upon the dividing ridge they should turn along the ridge to the left, rather than to the right hand ; that by so doing they would find the pond on the ridge, about twelve or fifteen miles from the place of departure. When we consider the extent of the ridge as spoken of by the witnesses, and view it as represented on the plat, this direction appears necessary ; for otherwise, a person would have had no guide to restrain him from from the pond intended instead of totuards it; or otherwise, to have traversed the ridge an unreasonable distance of twenty-five or thirty miles to find the pond. But when we consider that the salt spring and dividing ridge were well known, and that a plain road led from the salt spring to the ridge, and then along it southwestwardly, it is not rea-soable that Brooks should have made so wide a mistake as to suppose the ridge twelve or fifteen miles distant from the salt spring on a due southwest line, when it was only six or seven by pursuing the road. To reject the pond, expressly named for a beginning, with course and distance from it as a place of departure, would be a wild arbitrium in a judge. In the absence of the pond, the touchstone of Brooks's location, as well as of John and James Dupuy’s respective entries, those claims must be declared defective and illegal, acording to principles already settled in Cox vs. Smyth, Craig vs. Machir, Ward and Kenton vs. Lee & als. and many other decisions of jhe like kind. To attach Brooks’s entry t® *128 Flemming's pond, designated on the plat, to which it kai several kindred claims, would be equally fatal to the whole of the appellee’s asserted title to the lands in controversy. If Brooks’s entry was established by beginning there, yet the entry of James Dupuy, if then established as a valid location, could not be made to cover any part of the land surveyed for Smith. Any intersection between a stream and the war road, east or nearly east of Brooks, when surveyed from Flemming’s pond, wouid throw James Dupuy V entry, when run from that intersection, entirely off, and south of the appellant’s survey. And if the claim of Brooks cannot be upheld by assuming that fond as a beginning, there is no other exhibited, or evidence by this record which can uphold it. The claim of the appellee to any and every part of the land in controversy, must therefore be held and taken as invalid and devoid of any equitable foundation.
Decree reversed ; and the cause remanded to the circuit court, that the said injunction may be dissolved, and the bill of the said complainant dismissed with costs.